THE STATE OF NEVADA on Relation of ELIZA-BETH WALSH, Relator, *v.* D. M. BUCKINGHAM, Clerk and Ex Officio Treasurer of Mineral County, Nevada, and T. O. McKINNON, M. PETERSON and H. BOERLIN, Constituting the Board of County Commissioners of the County of Mineral, State of Nevada, Respondents.

No. 3233

July 1, 1938.                    80 P.(2d) 910.

*Thatcher & Woodburn,* for Relator:

*Edward F. Lunsford,* for Respondent D. M. Buckingham, did not file a brief.

## OPINION

By the Court, DUCKER, J.:

This is an original proceeding in mandamus. By her amended petition relator seeks to compel the payment of certain bonds and the assignment of certain funds for the purpose of such payment. The amended petition shows substantially as follows: Prior to February 5, 1936, the town of Mina, Mineral County, Nevada, was organized as a town under general laws. The legislature at the 1935 session enacted a statute, chapter 139, Statutes of 1935, which authorized the county commissioners of Mineral County, acting as a town board for the town of Mina, to issue bonds for the purpose of providing a waterworks for such town. Under the authority of this statute the board of county commissioners, acting as a town board for the said town of Mina, duly issued and sold to relator $20,000 in interest-bearing bonds, the same being numbered 1 to 40, inclusive, in the principal sum of $500 each, bearing

interest at the rate of six percent (6%), payable semi-annually on the first Monday of January and July of each succeeding year starting on the first Monday in July 1936. The bonds were coupon bonds and the interest coupons were in the sum of $15 each. Bonds numbered 1, 2, and 3 were to become due and payable on the first Monday in January 1938, and three bonds maturing on the first Monday in January in each year thereafter until the full amount of the indebtedness had been paid.

After the first Monday in January 1938, and the first meeting of said board in that year, relator presented to respondent, county treasurer, bonds 1, 2, and 3, then due and payable, together with 40 coupons in the amount of $15 each, and demanded payment. There was then due relator $1,500 on the three bonds presented, and $600 interest. The county treasurer refused to pay the principal of the three bonds or the interest due on all thereof, or any part of said principal or interest, and still refuses to pay the same.

Prior to the first meeting of the county commissioners in January 1938, there existed a surplus of moneys in a fund of Mineral County known as "The Mina Contingent Water System Fund" of $892.63, which moneys were acquired from the sale of services from the town of Mina water system, under the provisions of said chapter 139.

At the time of the presentation of said matured bonds and said coupons for interest, then due, and demand for payment thereof upon said county treasurer, there was in his hands and possession as such county treasurer, in a special fund known as the "Mina Water Bond and Interest Redemption Fund," moneys in the sum of $293.30, and there now is therein the sum of $486.91 acquired from the levy of taxes. At all times since said first meeting of the board of county commissioners in the month of January 1938, the surplus moneys in the "Mina Contingent Water System Fund" have exceeded said amount of $892.63, and now amount to sufficient,

together with the moneys in the "Mina Water Bond and Interest Redemption Fund," to pay the bonds and interest coupons heretofore presented by relator for payment. At the time of said presentation and demand for payment there was in the two funds a sum in excess of $1,100.

It is alleged in the amended petition that it is the duty of the board of county commissioners of Mineral County to assign the surplus moneys in the "Mina Contingent Water System Fund" to the "Mina Water Bond and Interest Redemption Fund," and has been its duty ever since the first meeting in January 1938, which it has failed to do. It is also alleged in the amended petition that it was the duty of the county treasurer at the time of the presentation and demand for payment by relator and ever since has been his duty to pay the principal of said three bonds and interest, or as much thereof as might be paid from the moneys in said redemption fund. Upon the presentation and hearing of the amended petition an amended alternative writ of mandate issued directing respondent commissioners to make the assignment prayed for, and respondent county treasurer to make the payment demanded, or as much thereof as might be paid from the moneys in his hands by reason of such assignment, or in said redemption fund, or show cause for not doing so. Respondent commissioners made no return to said amended alternative writ.

A return was made by respondent county treasurer in which he admitted most of the allegations of the amended petition. As to such as pertained to the duty of the commissioners to assign moneys from the former fund to the latter, he disclaimed knowledge and information sufficient to base a belief. He alleged that at the time of said presentation and demand there was not and is not at the present time moneys in the redemption fund sufficient to make payment of the three bonds and interest, and that this fund is the only fund out of

which he is authorized by law to make payment and redeem the bonds and interest, and on that account he was unable to perform his duty in that respect. He alleged that his failure to pay any part or portion thereof out of the small balance in the redemption fund was due to the fact that he was advised and believed that he could not pay any amount thereon less than the whole amount when due and that no demand or request was made on him by relator for the payment of any amount less than the whole thereof. There is no contention on the part of respondent that relator's bonds are not valid bonds or that relator is not now entitled to payment of the first three bonds and interest on all thereof.

If it is now and was the duty of the respondent commissioners at the first meeting of the board to assign the surplus moneys in the "Mina Contingent Water System Fund" to the "Mina Water Bond and Interest Redemption Fund," the peremptory writ must issue against respondents. Humboldt County v. County Commissioners of Churchill County, 6 Nev. 30. In the foregoing case it was held to be the only plain, speedy and adequate remedy to compel county commissioners to set apart certain funds in the treasury for a specific purpose when by statute they were absolutely required to do so and failed or neglected to do their duty in that regard.

The act under which the bonds were issued and sold, being chapter 139, Statutes of 1935, provides in part as follows:

"SEC. 5. To provide for the payment of said bonds and the interest thereon the board of county commissioners shall levy and collect annually a special tax on the assessed value of all property, both real and personal, subject to taxation, including proceeds of mines, within the boundaries of the town of Mina, Mineral County, until such bonds and interest thereon shall have been fully paid, sufficient to pay the interest on said

bonds and to pay and retire (beginning with the bond number one, and consecutively thereafter) six of said bonds annually, beginning with the first Monday in January of the second year after said bonds are issued, and on the first Monday in January of each year thereafter until all of said bonds have been redeemed or retired. Such tax shall be levied and collected in the same manner and at the same time as other taxes are assessed and collected, and the proceeds thereof shall be kept by the county treasurer in a special fund to be known as 'Mina Water Bond and Interest Redemption Fund.' Said bonds and interest shall be paid from this fund. * * *

"SEC. 7. Whenever the county treasurer shall redeem any of the bonds issued under the provisions of this act, he shall cancel the same by writing across the face thereof 'Paid,' * * *. Should the holder of said bonds, or any of them, for any cause whatever, fail to present said bonds to the said county treasurer for payment when they become due, all interest on such bonds shall thereafter immediately cease."

■ It is seen from the above that the relator's claim required no approval of either the board of county commissioners or auditor, but that it is the explicit duty of the county treasurer to redeem the bonds when due and presented for payment. Mandamus lies to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station. Section 9242 Nevada Compiled Laws. The duty of respondent commissioners to make the assignment claimed by relator does not appear from the provisions of said chapter 139. However, section 8 thereof provides:

"SEC. 8. The provisions of the existing law respecting the manner of acquisition of utilities, advertising notice of intention to issue bonds, bond elections, the duty of commissioners to act on a proper petition, the collection and enforcement of collection of rates for service, and all other provisions not expressly superseded

by this act shall apply to the acquisition, management, and financing of the systems mentioned in this act."

We must therefore look to the coexisting law respecting the manner of acquiring utilities, etc., to ascertain fully the duties incumbent on the county commissioners in managing and financing the water system acquired in the instant case.

A statute by reference made a part of another law becomes incorporated in it and remains so as long as the former is in force. This has long been held an effective mode of legislation. Davison v. Heinrich, 340 Ill. 349, 172 N. E. 770; State ex rel. Hahn v. District Court, 83 Mont. 400, 272 P. 525; State ex rel. Fritz v. Gongwer, 114 Ohio 642, 151 N. E. 752; 59 C. J. 1059.

Where the reference, as in the case at bar, is to the law generally, the rule is stated in Davison v. Heinrich, supra, as follows (page 771) : "It is a well-settled rule of statutory construction that, where the reference in an adopting statute is to the law generally which governs the particular subject and not to a particular act, by title or otherwise, the reference will be regarded as signifying and including the law in force on the subject at the time it is invoked. People v. Kramer, 328 Ill. 512, 160 N. E. 60; People v. Crossley, 261 Ill. 78, 103 N. E. 537; Culver v. People ex rel. Kochersperger, 161 Ill. 89, 43 N. E. 812."

When chapter 139, Statutes of 1935, was enacted, there existed an act still in force entitled: "An Act to enable the incorporated cities and towns of the State of Nevada to acquire by construction, purchase or otherwise, sewerage systems, light systems, water systems, or combined water and light systems, or combined water, light and sewerage systems, and to issue bonds for the construction or purchase of the same, and to provide for the fixing and collections of rates for the service thereof and other matters relating thereto." Approved March 23, 1911, chapter 169. See sections 1327 to 1340 of Nevada Compiled Laws. Section 9 of said act (section 1335 N. C. L.) provides: "All moneys

acquired by the sale of service herein provided for shall be paid to the county treasurer and by him assigned to a fund to be known as the '................. Contingent Light,' 'Contingent Water,' 'Contingent Sewerage,' 'Contingent Water and Light' or 'Contingent Sewerage, Water and Light fund of ................. town,' inserting before the word 'Contingent' the name of the town to which said fund is credited; the contingent expense necessary to the installment, management and control of any system acquired under the provisions of this act shall first be paid out· of said fund; the surplus money remaining after the payment of such contingent expenses shall annually thereafter and at the first meeting of the board of commissioners in January of each year thereafter be assigned by the county commissioners to the city as a redemption fund for the payment of the bonds issued under the provisions of this act. No interest shall be paid on said bonds after their maturity."

■ This section must, under the rule above stated, be taken in connection with the provisions of chapter 139, Statutes 1935. So considered, the two statutes reveal the following duties imposed on the county commissoners of Mineral County relative to the payment of the bonds issued and sold under the provisions of said chapter 139: They must levy and collect a tax for the payment of the bonds and interest and place the proceeds thereof in the "Mina Water Bond and Interest Redemption Fund." They must place all moneys acquired by the sale of services of the Mina water system in a contingent fund and pay the expenses necessary to the installment, management and control of such system therefrom. At their first meeting in January of each year they must transfer all surplus moneys remaining in said contingent fund to the bond and interest redemption fund. The latter duty has not been performed.

It is ordered that the peremptory writ of mandate issue herein commanding respondents, T. O. McKinnon, M. Peterson, and H. Boerlin, constituting the board of

county commissioners of Mineral County, Nevada, forthwith upon the receipt of the writ to assign to the city of Mina as a redemption fund for the payment of relator's bonds issued under the provisions of chapter 139, Statutes of 1935, and interest thereon, all surplus moneys which were at the first meeting of said board in the month of January 1938, and now are, held in the "Mina Contingent Water System Fund," and commanding respondent D. M. Buckingham, as County Treasurer of Mineral County, Nevada, forthwith upon said assignment, to pay to relator Elizabeth Walsh from the funds in his possession as County Treasurer of Mineral County, Nevada, in the "Mina Water Bond and Interest Redemption Fund," together with any moneys so assigned by said board of county commissioners, the principal sum due upon those certain bonds, Nos. 1, 2, and 3, issued under the provisions of chapter 139, Statutes 1935, and in the total sum of $1,500, together with the sum of $15 for each coupon now due upon bonds Nos. 1 to 40, inclusive, issued under the aforesaid statute, or as much thereof as may be paid from the moneys then in his hands by reason of said assignment.